[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Buttery*, Slip Opinion No. 2020-Ohio-2998.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-2998

THE STATE OF OHIO, APPELLEE, *v.* BUTTERY, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Buttery*, Slip Opinion No. 2020-Ohio-2998.]**

*Criminal law—R.C. 2950.04—Constitutional law—Due process—Right to a jury trial—Failure to register as a sex offender following a delinquency adjudication—Statute does not use an adjudication of delinquency to enhance a sentence—Juvenile adjudication is not an element of the offense—Failure-to-report offense is a violation of a court order— Conviction does not violate right to a jury or to due process.*

(No. 2018-0183—Submitted August 6, 2019—Decided May 21, 2020.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-160609, 2017-Ohio-9113.

————————

**KENNEDY, J.**

{¶ 1} In this discretionary appeal from a judgment of the First District Court of Appeals, we are asked to determine whether a conviction for failure to register

as a sex offender under R.C. 2950.04 violates a defendant's due-process and jury-trial rights guaranteed by the Ohio Constitution and United States Constitution, when the defendant's duty to register arises from a juvenile court's delinquency adjudication. The court of appeals held that such a conviction is not unconstitutional. We agree, and we therefore affirm the judgment of the appellate court.

## FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} Appellant, Robert Buttery, was 14 years old when he committed what would have been two counts of fourth-degree-felony gross sexual imposition if committed by an adult. On October 14, 2011, Buttery was adjudicated delinquent as to the offenses. He was placed on probation by the juvenile court and was provided treatment for his behavior, including placement in a treatment facility. On January 13, 2012, after a hearing, Buttery was classified as a juvenile-offender registrant and as a Tier I sex offender and was ordered to comply with the registration, notification-of-address-change, and verification duties imposed by R.C 2950.04, 2950.041, 2950.05, and 2950.06 for a period of ten years, with in-person verification annually.

{¶ 3} On November 23, 2015, when Buttery was 19 years old, he was indicted for violating a duty to register as a sex offender pursuant to R.C. 2950.04. The indictment alleged that the duty to register arose as a result of his juvenile adjudication; because he had been adjudged delinquent for gross sexual imposition, which would have been a fourth-degree felony if committed by an adult, the failure-to-register charge was a fourth-degree felony by operation of R.C. 2950.99(A)(1)(a)(ii). Buttery moved to dismiss the indictment for various procedural reasons (none of which were based on either the Ohio or federal Constitutions), arguing that various errors that occurred in the juvenile court had rendered his sex-offender classification void. The trial court denied the motion. Buttery then entered a no-contest plea, and the trial court found him guilty. The

court sentenced him to three years of community control and informed him that an 18-month prison term would be imposed upon a violation of community control.

{¶ 4} Buttery appealed the conviction to the First District Court of Appeals, arguing that his conviction was unconstitutional based on this court's decision in *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, which was decided after Buttery's conviction but during the pendency of his appeal. In *Hand*, this court held that using a defendant's adjudication of delinquency to enhance the degree of or sentence for a subsequent crime the defendant committed as an adult violates the Due Process Clauses of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution "because it is fundamentally unfair to treat a juvenile adjudication as a previous conviction that enhances either the degree of or the sentence for a subsequent offense committed as an adult." *Id.* at ¶ 37.

{¶ 5} The First District Court of Appeals held that *Hand* was distinguishable and affirmed the judgment of the trial court. The court reasoned that unlike the statutory scheme at issue in *Hand*, R.C. 2950.04 does not treat the juvenile adjudication as an equivalent to an adult conviction; instead, under R.C. 2950.04, the duty to register arises from an order issued by a court after the juvenile has been adjudicated delinquent. The appellate court held, "The juvenile adjudication is not a penalty-enhancing element; it is an element of the crime of failing to register." 2017-Ohio-9113 at ¶ 20.

{¶ 6} Buttery appeals from that holding. This court accepted one proposition of law for review:

> Juvenile adjudications cannot satisfy elements of an offense committed as an adult. Fifth, Sixth, and Fourteenth Amendments, United States Constitution; Sections 5 and 16, Article I, Ohio Constitution. *State v. Hand,* [149 Ohio St.3d 94, 2016-Ohio-5504,

73 N.E.3d 448]; *State v. Bode,* 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156; *Alleyne v. United States,* 570 U.S. [99], 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013); *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

*See* 152 Ohio St.3d 1462, 2018-Ohio-1795, 97 N.E.3d 499.

## LAW AND ANALYSIS

### Plain Error

**{¶ 7}** There is no dispute that Buttery failed to raise any constitutional issue at the trial-court level; he raised his due-process argument for the first time in the court of appeals. The First District did not address whether Buttery forfeited this argument by failing to raise it in the trial court. "[T]he question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court." *State v. Awan,* 22 Ohio St.3d 120*,* 122, 489 N.E.2d 277 (1986). Nevertheless, "this court has discretion to consider a forfeited constitutional challenge to a statute. We may review the trial court decision for plain error * * *." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16. To establish that plain error occurred, we require a showing that there was an error, that the error was plain or obvious, that but for the error the outcome of the proceeding would have been otherwise, and that reversal must be necessary to correct a manifest miscarriage of justice. *Id.* We hold that the trial court did not err in this case.

### *Apprendi, Alleyne,* **and** *Hand*

**{¶ 8}** Buttery argues that a juvenile adjudication cannot satisfy an element of an offense committed by an adult. He argues that his conviction under R.C. 2950.04 is based on his adjudication of delinquency. Because that adjudication was not the product of a jury trial, Buttery argues that it cannot be a factual basis for his conviction as an adult. Essentially, then, Buttery argues that no adult who was

ordered to register as a sex offender in a juvenile proceeding may be charged with a violation of R.C. 2950.04 for failing to register.

{¶ 9} Our analysis begins with two United States Supreme Court cases that this court relied on in *Hand*—*Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). In *Apprendi*, the court addressed a New Jersey law under which the maximum prison sentence for possession of a firearm for an unlawful purpose could be increased 10 to 20 years if the trial judge found by a preponderance of the evidence that the defendant had committed his crime with a racial bias. The court held that using judicial fact-finding to enhance a sentence violated the defendant's due-process and jury-trial rights: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi* at 490. In *Alleyne*, the court dealt with a similar issue regarding mandatory minimum sentences in regard to a Virginia statute under which the minimum sentence for carrying a firearm in relation to a crime of violence increased from five years to seven years if the judge determined by a preponderance of the evidence that the firearm had been brandished during the crime. The court held that the law was unconstitutional because "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne* at 103.

{¶ 10} In *Hand*, this court also dealt with a sentence enhancement, but it did not involve the judicial fact-finding at issue in *Apprendi* and *Alleyne*. *Hand* addressed the exception that *Apprendi* created for "the fact of a prior conviction," *Apprendi* at 490, in regard to sentence enhancement. Under *Apprendi*, any fact *beside the fact of a prior conviction* that increases a penalty beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. In *Hand*, the defendant had been sentenced under R.C. 2929.13(F)(6), which

requires a mandatory prison term if a defendant who committed a first- or second-degree felony had been previously convicted of a first- or second-degree felony. Hand had been adjudicated delinquent as a juvenile for an offense that would have been aggravated robbery if committed by an adult. The issue, then, was whether that juvenile adjudication operated as a first-degree-felony conviction to enhance his sentence. Because R.C. 2929.13(F)(6) did not define the word "convicted," the trial court applied R.C. 2901.08(A), which equated a juvenile adjudication to a conviction for purposes of determining the offense to be charged and the sentence to be imposed when a later offense was committed.

{¶ 11} We noted in *Hand* that under *Apprendi*, "prior convictions are treated differently only because 'unlike virtually any other consideration used to enlarge the possible penalty for an offense, * * * a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees.' *Jones v. United States,* 526 U.S. 227, 249, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)." (Ellipses sic.) *Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, at ¶ 31.

{¶ 12} The question in *Hand* was whether a juvenile adjudication was a prior conviction for purposes of sentence enhancement. *Hand* recognized that in the juvenile system, which is civil in nature and emphasizes treatment and rehabilitation to prevent treatment of juveniles as criminals, a jury trial is not required under the state and federal Constitutions. *Id*. at ¶ 15-19. This court reasoned that "[i]t is contradictory and fundamentally unfair to allow juvenile adjudications that result from these less formal proceedings to be characterized as criminal convictions that may later enhance adult punishment." *Id*. at ¶ 35. This court concluded that treating a juvenile adjudication as an adult conviction was contrary to *Apprendi*: "To convert an adjudication into a conviction when the adjudication process did not provide the right to have a jury test the elements of that offense offends due process and *Apprendi* and thus the state cannot treat a prior

juvenile adjudication as a prior conviction to enhance the penalty for a subsequent conviction." *Id*. at ¶ 36. The court recognized that its view differed with that adopted by the majority of courts in other jurisdictions. *Id*. at ¶ 31. Other courts, for instance, have held that "the protections juvenile defendants receive—notice, counsel, confrontation and proof beyond a reasonable doubt—ensure that the proceedings are reliable." *Welch v. United States*, 604 F.3d 408, 429 (7th Cir.2010).

### *Carnes*

{¶ 13} In *State v. Carnes*, 154 Ohio St.3d 527, 2018-Ohio-3256, 116 N.E.3d 138, this court declined to extend *Hand*. In *Carnes*, we considered the constitutionality of a weapons-under-disability statute that includes a prior juvenile-delinquency adjudication as a disability that prohibits a person from lawfully possessing a firearm. Distinguishing *Hand*, we held that although a prior juvenile adjudication is an element of the weapons-under-disability offense, the statute is not unconstitutional.

{¶ 14} Pursuant to R.C. 2923.13(A)(2), it is illegal for a person to possess a firearm, if "[t]he person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence." When he was a juvenile, Anthony Carnes had been adjudicated delinquent for an offense that would have been felonious assault, a felony of violence, if committed by an adult; 19 years after that adjudication Carnes was charged with possessing a firearm under a disability.

{¶ 15} This court pointed out that the statute we addressed in *Hand,* R.C. 2901.08(A), "expressly provided that a juvenile adjudication '*is a conviction* for a violation of the law or ordinance for purposes of determining the offense with which the person should be charged and * * * the sentence to be imposed.' " (Emphasis added in *Hand*.) *Id*. at ¶ 8, quoting R.C. 2901.08(A). But in *Hand*, we

7

had faulted that statute for "convert[ing] an adjudication into a conviction when the adjudication process did not provide the right to have a jury test the elements of that offense." *Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, at ¶ 36.

{¶ 16} We stated in *Carnes* that in comparison, R.C. 2923.13, the weapons-under-disability statute, did not equate a juvenile adjudication with an adult conviction but instead considered a juvenile adjudication itself as one of several discrete conditions that prevented a person from legally possessing a firearm. Other disabilities, in addition to adult convictions and juvenile adjudications, include being a fugitive or being drug dependent. R.C. 2923.13(A)(1) and (4).

{¶ 17} Further, this court noted that R.C. 2923.13(A)(2) does not use juvenile adjudications for sentence-enhancement purposes. Instead, "the juvenile adjudication is an element of the offense; it *is* the disability." (Emphasis sic.) *Carnes,* 154 Ohio St.3d 527, 2018-Ohio-3256, 116 N.E.3d 138, at ¶ 10. This court addressed the argument that classifying the juvenile adjudication as an element of the crime is more constitutionally consequential than its being a sentence enhancement; we held that because of the nature of the disability statute, the *existence* of the disability, rather than its reliability, is at issue. Id. at ¶ 10, 15. *Carnes* noted that the legislature had assessed the risks: "Inherent in R.C. 2923.13(A)(2) is a policy decision made by the legislature that allowing weapons in the hands of individuals with certain prior juvenile adjudications poses an increased risk to public safety, as does allowing weapons in the hands of those with other disabling conditions such as chronic alcoholism or drug dependence." *Carnes* at ¶ 16. Simply being adjudicated delinquent was enough to be considered a risk to public safety; the statute did not equate a juvenile adjudication to an adult conviction. And we held that "the lack of a right to a jury trial * * * does not make prior juvenile adjudications unreliable for risk-assessment purposes." *Id*. at ¶ 17.

8

{¶ 18} We also pointed out in *Carnes* that the General Assembly created a process in the statutory scheme through which a person may seek relief from a disability and that Carnes had not availed himself of that opportunity. *Id*. at ¶ 12.

**R.C. 2950.04**

{¶ 19} Buttery urges us to hold that juvenile adjudications cannot satisfy elements of an offense committed as an adult. But this court established in *Carnes* that a juvenile adjudication can form an element of an offense committed as an adult, at least when the adjudication is not treated as equivalent to a conviction and its use is not based on its reliability.

{¶ 20} As in *Carnes*, we decline to extend *Hand* in this case. At the outset, we note the differences between the statutory scheme at issue in this case and those at issue in *Hand* and *Carnes*. In both of the earlier cases, a delinquency adjudication led to a consequence that was unrelated to the juvenile adjudication. In *Hand*, the consequence of the delinquency adjudication for what would have been a first-degree felony if committed by an adult was that the sentence imposed following a later conviction was enhanced; in *Carnes*, the consequence of the delinquency adjudication for what would have been a felony of violence if committed by an adult was that it was illegal for Carnes to possess a firearm. But here, the delinquency adjudication itself is not at issue. We are instead dealing with Buttery's violation of a court order instructing him to register as a sex offender. R.C. 2950.04(A)(3)(a) states:

> Each child who is adjudicated a delinquent child for committing a sexually oriented offense and who is classified a juvenile offender registrant based on that adjudication shall register personally with the sheriff, or the sheriff's designee, of the county within three days of the delinquent child's coming into a county in

which the delinquent child resides or temporarily is domiciled for
more than three days.

{¶ 21} At the time of his offenses, Buttery was 14 years old and therefore subject to R.C. 2152.83(B), which allows a court to determine, after a juvenile has been found delinquent for committing a sexually oriented offense, whether to classify the juvenile as a juvenile-offender registrant.

Under R.C. 2152.83(B), juvenile-offender-registrant classification
is not mandatory; a judge may classify a juvenile as a juvenile-
offender registrant only after first conducting a hearing pursuant to
R.C. 2152.83(B)(2) to determine whether the delinquent child
should be so classified. As part of that hearing, a judge must
consider numerous statutory factors—including information about
the offender, the victim, the nature of the crime, and other factors—
before determining whether the juvenile should be subject to
juvenile-offender-registrant classification. R.C. 2152.83(D).

*In re I.A.*, 140 Ohio St.3d 203, 2014-Ohio-3155, 16 N.E.3d 653, ¶ 6. If the court classifies the juvenile as a juvenile-offender registrant, it shall "[i]ssue an order that * * * specifies that the child has a duty to comply with sections 2950.04, 2950.041, 2950.05 and 2950.06 of the Revised Code." R.C. 2152.83(B)(2)(b). The juvenile court issued such an order to Buttery in this case.

{¶ 22} Therefore, in this case, the statute at issue does not use the adjudication of delinquency to enhance a sentence, as the statute at issue in *Hand* did. Instead, the elements of the crime under R.C. 2950.04 are the duty to register and the violation of that duty. The duty to register was not automatically imposed on Buttery as the result of his delinquency adjudication; it was imposed only after

a hearing and consideration by the juvenile court of certain statutory factors. And we have already held that the creation of a duty to register under R.C. 2152.83(B) that extends into adulthood meets the requirements of due process. In *In re D.S.*, 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184, ¶ 40, this court held that "the imposition of juvenile-offender-registrant status under R.C. 2152.82 or 2152.83(B) with corresponding registration and notification requirements that continue beyond the offender's reaching age 18 or 21 does not violate the offender's due-process rights."

{¶ 23} For a defendant like Buttery, the duty to register as a sex offender is imposed after a hearing, which the juvenile court conducts to determine whether registration is appropriate for a juvenile already adjudicated as delinquent. Therefore, unlike in *Hand*, a defendant does not face additional repercussions because of his or her original juvenile adjudication. Instead, he or she faces punishment for violating a court order.

{¶ 24} Further, R.C. 2950.04 does not equate a juvenile adjudication with a criminal conviction, unlike R.C. 2901.08(A), the statute at issue in *Hand*. Instead, it states that a person who has a duty to register as a sex offender must indeed register as a sex offender or face criminal consequences. R.C. 2950.04 does not say that a juvenile adjudication *is* an adult conviction. It does not provide an additional penalty for recidivists based upon a prior juvenile adjudication. R.C. 2950.04 does not enhance a sentence for the violation of a different statute. Rather, it punishes a failure to comply with the requirements of registration.

{¶ 25} In *Carnes*, we noted that in the weapons-under-disability statutory scheme, the legislature had created a process by which a person could seek relief from the disability. Likewise, in the juvenile-sex-offender statutory scheme, an offender has the ability to have his or her duty to register modified or terminated. R.C. 2152.85(A) and (B). This court has pointed to the juvenile court's

jurisdiction—even after completion of the court's disposition—to modify or terminate the juvenile's registration status.

> Specifically, a juvenile-sex-offender registrant may petition the juvenile court, beginning at three years following the classification order, to request reclassification to a lower tier or to terminate the registration requirement altogether. R.C. 2152.85(A) and (B). After the court has ruled on the initial petition, the statute permits additional opportunities for review, first after another three-year period and then every five years thereafter. R.C. 2152.85(B). * * * Thus, the juvenile court judge maintains discretion throughout the course of the offender's registration period to consider whether to continue, terminate, or modify the juvenile's classification.

*In re D.S.*, 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184, ¶ 36.

{¶ 26} Therefore, a juvenile-sex-offender registrant has multiple opportunities to have the duty to register lifted. Like Carnes, who failed to avail himself of the ability to remove his disability through court action, Buttery has not availed himself of the opportunity to have his duty to register lifted.

{¶ 27} This case and *Carnes* share another key element. In *Carnes*, this court relied on its conclusion that the *existence* of the juvenile adjudication, rather than its *reliability*, was at issue in regard to the weapons-under-disability statute. The General Assembly had assessed the risk and determined that allowing people with juvenile adjudications involving violent felony offenses to possess firearms presented a danger. Likewise, here, "[t]he General Assembly has seen fit to impose registration sanctions in cases involving sex offenses to protect the public." *State v. Blankenship*, 145 Ohio St.3d 221, 2015-Ohio-4624, 48 N.E.3d 516, ¶ 36. The duty to register applies to adults convicted of sexually oriented offenses committed in

Ohio and to juvenile offenders who a judge determines should be classified as a juvenile-offender registrant, as well as to "each person who is convicted, pleads guilty, or is adjudicated a delinquent child in a court in another state, in a federal court, military court, or Indian tribal court, or in a court in any nation other than the United States for committing a sexually oriented offense." Again, the statute does not equate a juvenile adjudication with a criminal conviction. Instead, it considers a person who has been adjudicated delinquent and who a judge has classified as a juvenile-offender registrant to be among those groups of people who must register as sex offenders. In R.C. 2950.02, the General Assembly sets forth its reasoning for requiring registration for juvenile offenders and others:

> (A) The general assembly hereby determines and declares that it recognizes and finds all of the following:
>
> * * *
>
> (2) Sex offenders and child-victim offenders pose a risk of engaging in further sexually abusive behavior even after being released from imprisonment, a prison term, or other confinement or detention, and protection of members of the public from sex offenders and child-victim offenders is a paramount governmental interest.
>
> (3) The penal, juvenile, and mental health components of the justice system of this state are largely hidden from public view, and a lack of information from any component may result in the failure of the system to satisfy this paramount governmental interest of public safety described in division (A)(2) of this section.
>
> * * *
>
> (6) The release of information about sex offenders and child-victim offenders to public agencies and the general public will

further the governmental interests of public safety and public scrutiny of the criminal, juvenile, and mental health systems as long as the information released is rationally related to the furtherance of those goals.

(B) The general assembly hereby declares that, in providing in this chapter for registration regarding offenders and certain delinquent children who have committed sexually oriented offenses or who have committed child-victim oriented offenses * * * who otherwise will live in or near a particular neighborhood, it is the general assembly's intent to protect the safety and general welfare of the people of this state.

{¶ 28} As with the weapons-under-disability statute analyzed in *Carnes*, it is the existence of the duty to register, not the reliability of the underlying adjudication, that is at issue in the statute. The General Assembly has determined that certain juveniles adjudicated delinquent for certain offenses must register as sex offenders to protect the public; R.C. 2950.04 enforces that policy. As we stated in *Carnes*, a juvenile adjudication is not unreliable for risk-assessment purposes.

{¶ 29} Another aspect of the statutory scheme in this case distinguishes it from the statutes in *Hand* and *Carnes*. Juvenile-offender registrants are informed by the juvenile court of their duty to comply with registration statutes:

[E]ach person who is adjudicated a delinquent child for committing a sexually oriented offense or a child-victim oriented offense and who is classified a juvenile offender registrant based on that adjudication shall be provided notice in accordance with this section of the offender's or delinquent child's duties imposed under sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code and

> of the offender's duties to similarly register, provide notice of a change, and verify addresses in another state if the offender resides, is temporarily domiciled, attends a school or institution of higher education, or is employed in a state other than this state.

R.C. 2950.03(A). Here, Buttery received notice of his duty to register, and he and a guardian signed a form attesting to his knowledge of his responsibilities. Therefore, Buttery had notice of his duty to register as well as opportunities to relieve himself of that duty; this was not an instance of a juvenile adjudication having an unknown future sentence-enhancing effect on an offense committed later in life, as in *Hand*.

{¶ 30} Buttery points to a difference in this case from *Carnes*. We noted in *Carnes* that "[r]egardless of the predicate conduct, a violation of [the weapon-under-disability statute] is a third-degree felony * * *." *Carnes,* 154 Ohio St.3d 527, 2018-Ohio-3256, 116 N.E.3d 138, at ¶ 19. In contrast, if a person violates the duty to register under R.C. 2950.04, the degree of the offense is determined by the level of the sexually oriented offense in the underlying adjudication. *See* R.C. 2950.99(A) and (B). Therefore, because Buttery was adjudicated delinquent based on what would have been a fourth-degree felony offense if committed by an adult, his failure to register is a fourth-degree felony. R.C. 2950.99(A)(1)(a)(ii). Buttery asserts that in this way, the juvenile adjudication determines the penalty for failure to register, whereas any violation of the weapons-under-disability statute is a third-degree felony, regardless of the underlying disability. But our point in *Carnes* was that the juvenile adjudication did not operate as a *sentence enhancement* for an unrelated crime committed as an adult, as had been the case in *Hand*.

{¶ 31} Nor is the juvenile adjudication a sentence enhancement in this case. "The General Assembly is vested with the power to define, classify, and prescribe punishment for offenses committed in Ohio." *State v. Taylor*, 138 Ohio St.3d 194,

2014-Ohio-460, 5 N.E.3d 612, ¶ 12. Unlike the sentencing statutes in *Apprendi* and *Alleyne*, R.C. 2950.99 does not provide for sentence enhancements upon a trial court's determination of certain facts. The applicable felony level here is tied to the adjudication that led to the duty to register. We held in *Hand* that "[b]ecause a juvenile adjudication is not established through a procedure that provides the right to a jury trial, it cannot be used to increase a sentence beyond a statutory maximum or mandatory minimum." *Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, at ¶ 34. The statutory scheme at issue in this case does not increase a sentence beyond a statutory maximum or mandatory minimum. The General Assembly has simply determined what the penalty is for the failure to register for a person previously adjudicated delinquent for committing what would be a fourth-degree felony if committed by an adult, and the trial court properly imposed that punishment on Buttery.

**CONCLUSION**

{¶ 32} In this case, R.C. 2950.04 does not equate juvenile adjudications with criminal convictions. R.C. 2950.04 requires both adults convicted of sexual offenses and juveniles adjudicated delinquent for sexually oriented offenses and classified as juvenile-offender registrants to register as sex offenders. The duty to register does not automatically arise after a juvenile adjudication; for juveniles like the defendant in this case, the duty to register is the product of a hearing conducted by the juvenile court. Therefore, the elements of a violation of R.C. 2950.04 for a defendant like Buttery are the existence of a court order and a violation of that order. Juveniles adjudicated delinquent are not forced to register as sex offenders because their adjudications are considered reliable, but because the General Assembly has determined that juveniles adjudicated delinquent are among those people who must register in order to protect the public. As in *Carnes*, it is the existence of the adjudication rather than its reliability that is at issue in the statute. Finally, juveniles have notice of their duty to register and have multiple

opportunities to lift their duty to register through a judicial process, adding layers of due process that were not available for the defendants in *Hand*. For these reasons, we hold that the conviction of Buttery for a violation of R.C. 2950.04 that arose from a juvenile adjudication did not violate Buttery's rights to a jury or to due process under the Ohio Constitution and United States Constitution. We therefore affirm the judgment of the court of appeals.

Judgment affirmed.

FRENCH, GALLAGHER, DEWINE, and STEWART, JJ., concur.

O'CONNOR, C.J., concurs in judgment only, with an opinion.

DONNELLY, J., dissents, with an opinion.

EILEEN A. GALLAGHER, J., of the Eighth District Court of Appeals, sitting for FISCHER, J.

_____

**O'CONNOR, C.J., concurring in judgment only.**

{¶ 33} I agree with the majority's decision to affirm the court of appeals' judgment. I write separately, however, because I do not agree with the majority that this case and *State v. Carnes*, 154 Ohio St.3d 527, 2018-Ohio-3256, 116 N.E.3d 138, share key elements.

{¶ 34} I find this case to be wholly distinguishable from *Carnes* and *State v. Hand,* 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, because appellant Robert Buttery's conviction for failure to register was based on his obligation to do so as a Tier I sex offender. Importantly, Buttery continued to have an obligation to register past the age of 18. We have already held that the duty to register may continue past age 18. *See In re D.S.*, 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184, paragraph one of the syllabus ("The imposition of juvenile-offender-registrant status under R.C. 2152.82 or 2152.83(B) with corresponding registration and notification requirements that continue beyond the offender's reaching age 18

or 21 does not violate the offender's due-process rights"). This is, therefore, not a case in which the law has reached back in time to use a prior juvenile adjudication to enhance an adult sentence or satisfy an element of a crime committed as an adult. Instead, Buttery was convicted after he failed to comply with an obligation that applied to him as an adult—his duty to register under R.C. 2950.04. *See Carnes* at ¶ 41 (O'Connor, C.J., dissenting) ("Punishing an adult defendant because of a juvenile adjudication is fundamentally different from punishing an adult defendant for behavior exhibited as an adult").

{¶ 35} In many ways, Buttery's arguments are essentially a challenge to his offender classification. But he did not challenge that classification in 2012 when, after a hearing, he was classified as a juvenile-offender registrant and Tier I sex offender or in 2015 when the court confirmed his Tier 1 status after he had completed residential treatment. Thus, Buttery's attempt to frame the challenge to his conviction as being similar to the issue presented in *Hand*, and the majority's comparison of the case to *Carnes*, is unavailing. Accordingly, I concur in judgment only.

_____

**DONNELLY, J., dissenting.**

{¶ 36} I find several aspects of this case troubling. First, appellant, Robert Buttery, did not raise a due-process argument in the trial court. Accordingly, the due-process argument was waived and need not have been addressed by the First District Court of Appeals. *See In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus (even when waiver of a constitutional issue is clear, "this court reserves the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it").

18

**{¶ 37}** Second, Buttery has not asked the juvenile court to relieve him of his statutory duty to register. It is not clear why Buttery did not request relief from this severe collateral consequence when the legislature has provided him with a statutory procedure to do so. *See* R.C. 2950.15 (allowing for the termination of the registration requirement upon motion).

**{¶ 38}** Third, certain alleged procedural errors or defects are the subject of other appeals, preventing us from addressing the entire case. *See, e.g.*, *State v. Buttery*, 1st Dist. C-170141, 2018-Ohio-2651. (One example is whether Buttery received a timely completion-of-disposition hearing. *See In re R.B.*, Supreme Court case No. 2019-1325.)

**{¶ 39}** Fourth, we have no idea whether Buttery was afforded due process in the juvenile court when his delinquency was established at his adjudication hearing. It would be nice to review that court's transcript, but it was not part of the record—though it probably should be—and we have not asked for it. It is easy to imagine that Buttery was not made fully aware of the collateral consequences of his admission to the allegations against him. In the absence of the transcript, all we can do is speculate. I would remand this matter to the court of appeals with instructions that it obtain and review the transcript.

**{¶ 40}** Finally, I have grave concerns about whether constitutional due-process requirements were met in Buttery's juvenile proceeding. What constitutes due process in a juvenile setting is inexact, but the "overarching concern" is "fundamental fairness." *State v. D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, ¶ 51-52.

**{¶ 41}** Buttery was adjudicated delinquent in a civil system that is designed to rehabilitate offenders, not punish them. *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, ¶ 14; *In re Caldwell*, 76 Ohio St.3d 156, 157-158, 666 N.E.2d 1367 (1996). In contrast, R.C. 2950.04, which requires Buttery to register as a sexual offender, is part of the criminal code and is punitive. *In re D.S.*, 146

Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1183, ¶ 50 (Lanzinger, J., dissenting) ("the registration process imposed on sex offenders in Ohio is punitive"), citing *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 16.

{¶ **42**} Our juvenile-court system is designed to keep juvenile proceedings out of the public eye to prevent a lifetime of stigma for acts committed as a juvenile. Buttery has not committed any offense as an adult similar to the acts at issue in his juvenile proceeding. But the successful efforts he undertook to rehabilitate himself have now been undermined: his acts are now in the public eye.

{¶ **43**} This case does not involve a juvenile adjudication that was used to enhance "the degree of or the sentence for a subsequent offense committed as an adult," which we have held is a patent violation of due process, *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, paragraph one of the syllabus and ¶ 36. This case is worse. Here, Buttery's juvenile adjudication is the sine qua non of his conviction for failure to register. Buttery's juvenile adjudication, in a civil proceeding, was not used to increase the severity of his penalty for a subsequent offense, it is the thing without which there would not have been the subsequent offense.

{¶ **44**} Buttery is being punished as an adult based on acts he committed as a juvenile. This is fundamentally unfair. Moreover, the degree of his punishment is based on the degree of the felony that Buttery would have been charged with if he had committed the acts as an adult—even though he was not convicted of a felony and he did not have a right to a jury trial because he was a juvenile at the time of the acts. This is also fundamentally unfair.

{¶ **45**} Buttery has not received due process. I dissent.

———————————

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Paula Adams, Assistant Prosecuting Attorney, for appellee.

Raymond T. Faller, Hamilton County Public Defender, and Julie Kahrs Nessler and Joshua A. Thompson, Assistant Public Defenders, for appellant.

Rickell Howard Smith, urging reversal for amicus curiae Children's Law Center, Inc.

Timothy Young, Ohio Public Defender, and Brooke M. Burns, Assistant Public Defender, urging reversal for amicus curiae Office of the Public Defender.

_____