[Cite as *State v. Converse*, 2021-Ohio-1274.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190480<br>TRIAL NO. B-1901481 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| ISAAC CONVERSE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:   Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed and Cause Remanded

Date of Judgment Entry on Appeal:  April 14, 2021

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Jessica Moss*, Assistant Public Defender, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1}     Defendant-appellant Isaac Converse appeals his conviction for failing to verify his address in violation of R.C. 2950.06.  He first argues that his conviction was unconstitutional because it utilized a juvenile adjudication as the basis for his duty to register.  He also argues that that his trial counsel rendered ineffective assistance and that the trial court erred as a matter of law in including a 36-month term of incarceration as a potential sentence for a community-control violation in the sentencing entry.

{¶2}     We hold that it was not error to utilize Converse's juvenile adjudication as an element of the offense for a violation of R.C. 2950.06 and that Converse did not receive ineffective assistance from his trial counsel.  But because the inclusion in the sentencing entry of a 36-month sentence for a community-control violation was a clerical error, we remand for the trial court to correct that clerical error through a nunc pro tunc entry.  The judgment of the trial court is otherwise affirmed.

### Factual and Procedural Background

{¶3}     Following an adjudication as a juvenile for rape, Converse was required to register as a sex offender and periodically verify his address.  Converse failed to do so, and was indicted for failing to verify his address in violation of R.C. 2950.06, a first-degree felony.  He pled guilty to a reduced charge of the offense as a fourth-degree felony.  The trial court sentenced Converse to a two-year period of community control and stated at the sentencing hearing that Converse faced a potential 18-month sentence if he violated the terms of his community control.  The

trial court's sentencing entry, however, stated that he faced a potential 36-month sentence for a community-control violation.

### *Constitutionality of Conviction*

{¶4}   In his first assignment of error, Converse argues that his conviction for a violation of R.C. 2950.06 was unconstitutional and in violation of his right to a jury trial because it utilized a juvenile adjudication and juvenile court order to register as an element of the offense.   Converse failed to raise this argument before the trial court, so we review for plain error.  *State v. Buttery*, 162 Ohio St.3d 10, 2020-Ohio-2998, 164 N.E.3d 294, ¶ 7.   Plain error is established where the error is plain or obvious, the outcome of the proceedings would have been different but for the error, and reversal is necessary to correct a manifest miscarriage of justice.  *Id.*

{¶5}   R.C. 2950.06 provides in relevant part that "[a]n offender or delinquent child who is required to register a residence address pursuant to division (A)(2), (3), or (4) of section 2950.04 or 2950.041 of the Revised Code shall periodically verify the offender's or delinquent child's current residence address * * * in accordance with this section."  R.C. 2950.06(A).  Converse's duty to register under R.C. 2950.06 originally arose pursuant to R.C. 2950.04(A)(3),[1] which provides that:

> Each child who is *adjudicated a delinquent child for committing a*
> *sexually oriented offense and who is classified a juvenile offender*
> *registrant based on that adjudication* shall register personally with
> the sheriff, or the sheriff's designee, of the county within three days of

---

[1] While the duty to register was imposed when Converse was a juvenile, Converse was charged in this case as an adult.   Our record does not contain Converse's tier classification, although Converse stated on record at the sentencing hearing that he was required to verify his address every 90 days.   Nor does our record indicate whether the trial court conducted a hearing upon completion of Converse's disposition in accordance with R.C. 2152.84 or whether Converse has sought to have his tier classification modified pursuant to R.C. 2152.85.

the delinquent child's coming into a county in which the delinquent child resides or temporarily is domiciled for more than three days.

(Emphasis added.)

{¶6} Converse argues that because his duty to register was based on a juvenile adjudication and juvenile court order to register—which were never submitted to a jury and determined beyond a reasonable doubt—his conviction for failing to verify his address was unconstitutional and in violation of his right to a jury trial. Converse bases his argument on the decision of the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and he relies on a quote from that case stating that a criminal defendant is entitled to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Id.* at 477, quoting *United States v. Gaudin,* 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995).

{¶7} The Supreme Court of Ohio recently rejected an argument nearly identical to Converse's in *Buttery*, 162 Ohio St.3d 10, 2020-Ohio-2998, 164 N.E.3d 294, at ¶ 1. The court examined *Apprendi*, as well as its own prior decisions in *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, and *State v. Carnes*, 154 Ohio St.3d 527, 2018-Ohio-3256, 116 N.E.3d 138, in concluding that a conviction for a violation of R.C. 2950.04 that arose from a juvenile adjudication did not violate the Due Process Clauses under the Ohio and United States Constitutions.

{¶8} In *Hand*, the court considered whether a statute that allowed a prior juvenile adjudication to serve as a prior conviction that enhanced a subsequent adult sentence by requiring a mandatory prison term violated due process under *Apprendi*. *Hand* at ¶ 7. The court held that the statute at issue, R.C. 2901.08(A),

4

violated the Due Process Clauses of both the United States and Ohio Constitutions "because it is fundamentally unfair to treat a juvenile adjudication as a previous conviction that enhances either the degree of or the sentence for a subsequent offense committed as an adult." *Id.* at paragraph one of the syllabus. The court further held that "[b]ecause a juvenile adjudication is not established through a procedure that provides the right to a jury trial, it cannot be used to increase a sentence beyond a statutory maximum or mandatory minimum." *Id.* at paragraph 2 of the syllabus.

{¶9} The *Carnes* court considered whether using a prior juvenile adjudication as an element of the weapons-under-disability offense set forth in R.C. 2923.13(A)(2) violated due process. *Carnes* at ¶ 1. The court recognized that the weapons-under-disability statute, unlike the statute at issue in *Hand*, did not equate a juvenile adjudication to a criminal conviction, but rather provided that a juvenile adjudication, like a criminal conviction, was a "discrete, alternative disability condition[ ]." *Id.* at ¶ 8-9. It further explained that the weapons-under-disability statute did not use a juvenile adjudication to enhance a sentence, and that the adjudication was an element of the offense—the adjudication itself was the disability. *Id.* at ¶ 10. Based on these considerations, the court declined to extend *Hand* and held that using a prior juvenile adjudication as an element of the weapons-under-disability offense did not violate due process. *Id.* at ¶ 21.

{¶10} With that background in mind, we turn to *Buttery*. In *Buttery*, the appellant was convicted of a violation of R.C. 2950.04 for violating his duty to register as a sex offender. *Buttery*, 162 Ohio St.3d 10, 2020-Ohio-2998, 164 N.E.3d 294, at ¶ 3. Buttery's duty to register stemmed from two juvenile adjudications for

5

gross sexual imposition. *Id.* at ¶ 2. On his direct appeal, this court rejected Buttery's argument that his conviction was unconstitutional under *Hand* because it utilized a juvenile adjudication as the basis for his duty to register. *Id.* at ¶ 4 and 5; *State v. Buttery*, 1st Dist. Hamilton No. C-160609, 2017-Ohio-9113, ¶ 21. In a discretionary appeal, the Supreme Court of Ohio considered "whether a conviction for failure to register as a sex offender under R.C. 2950.04 violates a defendant's due-process and jury-trial rights guaranteed by the Ohio Constitution and United States Constitution, when the defendant's duty to register arises from a juvenile court's delinquency adjudication." *Buttery*, 162 Ohio St.3d 10, 2020-Ohio-2998, 164 N.E.3d 294, at ¶ 1. It answered that question in the negative.

**{¶11}** The *Buttery* court reiterated its holding in *Carnes* that "a juvenile adjudication can form an element of an offense committed as an adult, at least when the adjudication is not treated as equivalent to a conviction and its use is not based on its reliability." As it did in *Carnes*, the court declined to extend the holding of *Hand*. *Id.* at ¶ 19. The court distinguished the statutory scheme in *Buttery* from those at issue in *Hand* and *Carnes*, stating:

> In both of the earlier cases, a delinquency adjudication led to a consequence that was unrelated to the juvenile adjudication. In *Hand*, the consequence of the delinquency adjudication for what would have been a first-degree felony if committed by an adult was that the sentence imposed following a later conviction was enhanced; in *Carnes*, the consequence of the delinquency adjudication for what would have been a felony of violence if committed by an adult was that it was illegal for Carnes to possess a firearm. But here, the

6

delinquency adjudication itself is not at issue. We are instead dealing with Buttery's violation of a court order instructing him to register as a sex offender.

*Id.* at ¶ 20.

{**¶12**} The *Buttery* court recognized that the juvenile adjudication was not used for sentence-enhancement purposes under R.C. 2950.04 and that R.C. 2950.04 did not equate a juvenile adjudication with a criminal conviction. *Id.* at ¶ 22 and 24. It further explained that Buttery's duty to register was imposed after a hearing in which the court determined whether registration was appropriate, and it acknowledged that a juvenile-sex-offender registrant has various opportunities in the sex-offender statutory scheme to have the duty to register terminated. *Id.* at ¶ 23 and 26. And it likened Buttery's case to *Carnes* because it was "the *existence* of the juvenile adjudication, rather than its *reliability*, [that] was at issue." *Id.* at ¶ 27.

{**¶13**} The court ultimately held that a conviction under R.C. 2950.04 for failure to register as a sex offender did not violate a defendant's due-process and jury-trial rights when the duty to register arose from a delinquency adjudication because:

R.C. 2950.04 does not equate juvenile adjudications with criminal convictions. R.C. 2950.04 requires both adults convicted of sexual offenses and juveniles adjudicated delinquent for sexually oriented offenses and classified as juvenile-offender registrants to register as sex offenders. The duty to register does not automatically arise after a juvenile adjudication; for juveniles like appellant in this case, the duty to register is the product of a hearing conducted by the juvenile court.

7

Therefore, the elements of a violation of R.C. 2950.04 for a defendant like Buttery are the existence of a court order and a violation of that order. Juveniles adjudicated delinquent are not forced to register as sex offenders because their adjudications are considered reliable but because the General Assembly has determined that juveniles adjudicated delinquent are among those people who must register in order to protect the public. As in *Carnes*, it is the existence of the adjudication rather than its reliability that is at issue in the statute. Finally, juveniles have notice of their duty to register and have multiple opportunities to lift their duty to register through a judicial process, adding layers of due process that were not available for the defendants in *Hand*.

*Id.* at ¶ 32.

{¶14} Converse argues that his case is distinguishable from *Buttery* because he was subject to a mandatory duty to register based on his age and adjudication, whereas the duty to register imposed in *Buttery* was discretionary. He contends that the *Buttery* court relied on the discretionary nature of the duty to register in reaching its decision, because the court stated that "[t]he duty to register does not automatically arise after a juvenile adjudication; for juveniles like appellant in this case, the duty to register is the product of a hearing conducted by the juvenile court." *Id.* Converse is correct that the court pointed out the discretionary nature of the duty to register in reaching its determination. But that was just one factor out of several that the court relied on, and we find the analysis of the Supreme Court to be equally applicable when the original duty to register is mandatory.

{¶15} R.C. 2152.83 sets forth when a duty to register is mandatory versus discretionary for delinquent children. R.C. 2152.83(A) concerns mandatory registration and provides that the court *shall issue* an order that classifies a child as a juvenile-offender registrant when the child is adjudicated delinquent for a sexually-oriented offense or a child-victim-oriented offense, the child was 16 or 17 years old at the time the offense was committed, and the court was not required to classify the child as either a juvenile-offender registrant or public-registry-qualified juvenile offender under other specified provisions of the Revised Code (none of which are applicable in this case).

{¶16} R.C. 2152.83(B) concerns juvenile offenders that are subject to registration at the trial court's discretion. It provides that the trial court *may conduct* a hearing to determine whether a child should be classified as a juvenile-offender registrant if the child was 14 or 15 years old at the time that the child was adjudicated delinquent for committing a sexually-oriented offense or a child-victim-oriented offense, and the court was not required to classify the child as either a juvenile-offender registrant or public-registry-qualified juvenile offender under other specified provisions of the Revised Code. R.C. 2152.83(B)(1). If the trial court conducts a hearing in accordance with division (B)(1), the court shall either decline to issue an order classifying the child as a juvenile-offender registrant or issue an order classifying the child as a juvenile-offender registrant. R.C. 2152.83(B)(2).

{¶17} The Eleventh District discussed the difference between R.C. 2152.83(A) and (B) in *In re T.M.*, 2016-Ohio-8425, 78 N.E.3d 349 (11th Dist.). It explained that:

9

The fundamental difference between sections (A) and (B) of R.C. 2152.83 is the juvenile's age. Under section (A), if other requirements are met, the trial court "shall" issue an order that classifies a 16- or 17-year-old child as a juvenile offender registrant and instructs the child to comply with registration requirements. R.C. 2152.83(A)(1). Under section (B), if other requirements are met, the trial court "may," in its "discretion," issue an order that classifies a 14- or 15-year-old child as a juvenile offender registrant and instructs the child to comply with registration requirements.

*Id.* at ¶ 10.

{¶18} Even though younger offenders such as Buttery who are subject to registration at the trial court's discretion under R.C. 2152.83(B) are accorded a hearing prior to the imposition of the duty to register, the statutory scheme nonetheless accords various safeguards to offenders subject to a mandatory duty to register under R.C. 2152.83(A). Prior to issuing an order under R.C. 2152.83(A), trial courts are required to conduct a hearing "to determine whether the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender." R.C. 2152.83(A)(2). The Supreme Court of Ohio has recognized that a determination of tier classification requires an exercise of the court's discretion. *In re D.S.*, 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184, ¶ 33; *In re T.M.* at ¶ 11.

{¶19} Further, all juvenile-offender registrants have the ability to petition to have her or his duty to register modified under R.C. 2152.85. *Buttery*, 162 Ohio

St.3d 10, 2020-Ohio-2998, 164 N.E.3d 294, at ¶ 25.  The Supreme Court of Ohio acknowledged this ability, stating:

> Specifically, a juvenile-sex-offender registrant may petition the juvenile court, beginning at three years following the classification order, to request reclassification to a lower tier or to terminate the registration requirement altogether.  R.C. 2152.85(A) and (B).  After the court has ruled on the initial petition, the statute permits additional opportunities for review, first after another three-year period and then every five years thereafter.  R.C. 2152.85(B).  * * * Thus, the juvenile court judge maintains discretion throughout the course of the offender's registration period to consider whether to continue, terminate, or modify the juvenile's classification.

*Id.* at ¶ 25, quoting *In re D.S.* at ¶ 36.  R.C. 2152.85, which permits a petition for reclassification, does not distinguish between offenders subject to mandatory registration and offenders subject to registration at the trial court's discretion.  It specifies that it applies to "a delinquent child who has been classified pursuant to this section or section 2152.82 or 2152.83 of the Revised Code a juvenile offender registrant."  R.C. 2152.85(A).

{¶20}  R.C. 2152.84 also accords juvenile-offender registrants a hearing upon completion of disposition.  The purpose of this hearing is for the trial court to:

> review the effectiveness of the disposition and of any treatment provided for the child, to determine the risks that the child might re-offend, to determine whether the prior classification of the child as a juvenile offender registrant should be continued or terminated as

11

provided under division (A)(2) of this section, and to determine whether its prior determination made at the hearing held pursuant to section 2152.831 of the Revised Code as to whether the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender should be continued or modified as provided under division (A)(2) of this section.

R.C. 2152.84(A)(1). And while only offenders subject to registration under R.C. 2152.83(B) may petition to have their registration terminated, offenders subject to registration under both R.C. 2152.83(A) and (B) may petition to have their tier classification modified. *See* R.C. 2152.84(A)(2)(b) and (c); *In re M.R.*, 7th Dist. Jefferson No. 13 JE 30, 2014-Ohio-2623, ¶ 65.

{¶21} Under R.C. 2950.04 and 2950.06, regardless of whether an offender is subject to mandatory registration under R.C. 2152.83(A) or subject to registration at the trial court's discretion under R.C. 2152.83(B), the offender faces a punishment for violating a court order. While mandatory registrants are not accorded a hearing prior to the imposition of the duty to register, the trial court is still accorded some discretion over mandatory registrants, and both categories of registrants have the ability to seek modification of their registration duties. For both types of registrants, the juvenile adjudication does not serve as a sentence enhancer, the adjudication is not equated to a criminal conviction, and it is the existence of the adjudication, rather than its reliability, that is at issue. *Buttery,* 162 Ohio St.3d 10, 2020-Ohio-2998, 164 N.E.3d 294, at ¶ 32.

**{¶22}** We therefore hold that Converse's conviction for a violation of R.C. 2950.06 was not unconstitutional and did not violate his right to a jury trial.

**{¶23}** The first assignment of error is overruled.

### *Ineffective Assistance*

**{¶24}** In his second assignment of error, Converse argues that he received ineffective assistance from his trial counsel.

**{¶25}** Counsel will not be considered ineffective unless her or his performance was deficient and caused actual prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Counsel's performance will only be deemed deficient if it fell below an objective standard of reasonableness. *Strickland* at 688; *Bradley* at 142. A defendant is only prejudiced by counsel's performance if there is a reasonable probability that the outcome of the proceedings would have been different but for the deficient performance. *Strickland* at 694; *Bradley* at 142.

**{¶26}** Converse contends that his counsel was ineffective for failing to move to dismiss the indictment on the grounds asserted in the first assignment of error, specifically that the charge was unconstitutional and violated his right to a jury trial because it was based on a duty to register stemming from a juvenile adjudication. But because we have held that a conviction under R.C. 2950.06 that was based on a juvenile adjudication and juvenile court order to register is not unconstitutional and does not violate a defendant's right to a jury trial, we cannot find that counsel was ineffective for failing to move to dismiss Converse's indictment on these grounds.

**{¶27}** The second assignment of error is overruled.

### *Clerical Error in Sentencing Entry*

{¶28} In his third assignment of error, Converse argues that the trial court erred in including a 36-month sentence for a community-control violation in the sentencing entry. He argues that the inclusion of such a sentence was a clerical error because the trial court informed Converse at sentencing that he was subject to 18 months in prison if he violated the terms of his community control.

{¶29} The state concedes that the sentencing entry contains this clerical error, and following our review of the record, we agree. At the sentencing hearing, the trial court sentenced Converse to a two-year period of community control and informed him that faced 18 months in prison for a community-control violation. The inclusion of a 36-month sentence in the sentencing entry was clearly a clerical error.

{¶30} We accordingly overrule Converse's third assignment of error as the trial court did not err in the imposition of sentence, but we remand for the trial court to correct the clerical error in its sentencing entry so that the entry conforms to the sentencing hearing and reflects that Converse was subject to an 18-month sentence for a community-control violation. *See* Crim.R. 36; *State v. Cooper*, 1st Dist. Hamilton No. C-180401, 2019-Ohio-2813, ¶ 9.

### *Conclusion*

{¶31} Having overruled Converse's assignments of error, we affirm the trial court's judgment. But we remand for the trial court to issue a nunc pro tunc entry to correct the clerical error in its sentencing entry.

Judgment affirmed and cause remanded.

CROUSE and WINKLER, JJ., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.