[Cite as *In re R.B.*, 2021-Ohio-2112.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| IN RE: R.B. | : | APPEAL NOS. C-170622 |
|  |  | C-170623 |
|  | : | TRIAL NOS. 11-9083X |
|  |  | 11-9085X |
|  | : |  |
|  | : | *O P I N I O N.* |

Appeals From: Hamilton County Juvenile Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: June 25, 2021

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams,* Assistant Prosecuting Attorney, for Plaintiff-Appellee State of Ohio,

*Raymond T. Faller,* Hamilton County Public Defender, and *Jessica Moss*, Assistant Public Defender, for Defendant-Appellant R.B.

**BERGERON, Judge.**

{¶1} In this remand of a juvenile case from the Ohio Supreme Court, we address four assignments of error that we previously deemed moot. Defendant-appellant R.B. challenges the trial court's decision to perpetuate his status as a Tier I juvenile-offender registrant on jurisdictional, procedural, and substantive grounds. After a thorough review of the record and extant authorities, we find R.B.'s arguments unavailing and affirm the judgments of the juvenile court.

I.

{¶2} These appeals are the product of a winding procedural posture that stretches back nearly a decade. In October 2011, R.B. (then 14 years old) admitted in juvenile court to committing sexual-related acts with his two four-year-old cousins, acts which if committed by an adult would have constituted two counts of gross sexual imposition (felonies of the fourth degree). Pursuant to two December 2, 2011 orders and the addendum to one of those orders, R.B. was committed to the Department of Youth Services ("DYS") until age 21. The court suspended R.B.'s commitment, placed him probation, and ordered him to complete a residential treatment program at Altercrest. Notably, the court suspended R.B.'s commitment on the express condition that he "obey all laws and orders of this Court."

{¶3} With R.B.'s disposition settled, the juvenile court proceeded to classification. At a hearing on January 13, 2012, the magistrate explained on the record that the parties had agreed that R.B. would be classified as a Tier I juvenile-offender registrant. The parties concurred with the magistrate's pronouncement—also on the record—and the magistrate issued a decision in each case that same day. Despite the apparent consensus on a Tier I classification, the body of both decisions erroneously reflected a Tier III sex-offender classification. The typographical error was remedied by a disclaimer at the end of each entry, "THIS IS A TIER I

2

CLASSIFICATION—NOT TIER III," and both entries contain R.C. 2152.84 and 2152.85 modification or termination language. The court notified R.B. of his Tier I registration duties, and both R.B. and his mother signed the notice of registration duties. They lodged no objection to or appeal from the January 2012 decisions.

{¶4} Initially, R.B. made considerable progress through his disposition. He completed each of the treatment requirements ordered by the court, received favorable reviews from service providers, and was discharged from his placement at Altercrest in February 2013. Several months later—on July 29, 2013—the juvenile court rewarded R.B.'s progress by releasing him from "official probation" and placing him on nonreporting probation with monitored time. Nonetheless, the magistrate denied his 2014 application to seal his record, explaining R.B.'s obligation to register until 2022 unless reclassified.

{¶5} Unfortunately, R.B.'s successful compliance with the mandates of his disposition did not last. In November 2015, R.B. was indicted in the Hamilton County Court of Common Pleas for failing to register. He pleaded no contest and was convicted. On appeal from this conviction, R.B. challenged the juvenile court's January 13, 2012 order requiring him to register. *State v. Buttery*, 1st Dist. Hamilton No. C-160609, 2017-Ohio-9113. He attacked the validity of the classification order for several reasons, including: "[1] the trial court signed the magistrate's decision, but did not enter its own judgment as required by Juv.R. 40(D)(4)(e)[,] * * * [2] the juvenile court judge's adoption of the magistrate's decisions was not date-stamped or file-stamped and was not filed with the clerk of courts," and "[3] the magistrate's April 28, 2015 entries improperly increased his classification from a Tier I offender to a Tier III offender." *Id.* at ¶ 6, 8. We disagreed, upholding the validity of the juvenile court's January 2012 classification order and explaining that the Tier III designation simply reflected a typographical error. *Id.* at ¶ 7, 8. We also rejected

3

R.B.'s attack on his failure-to-register conviction as wrongfully premised on a juvenile adjudication, a holding that the Ohio Supreme Court subsequently affirmed. *See State v. Buttery*, 162 Ohio St.3d 10, 2020-Ohio-2998, 164 N.E.3d 294 (conviction for failing to register where the duty to register arose from a juvenile adjudication did not violate due process or the right to a jury trial).

{¶6} As R.B.'s failure-to-register conviction wound its way to up to Ohio's highest court, the state moved to set a completion-of-disposition hearing in this case. R.B. objected, asserting that the juvenile court lacked jurisdiction to conduct a completion-of-disposition hearing. Zeroing in on the timing requirements of R.C. 2152.84, R.B. insisted that it was too late for the juvenile court to hold the hearing, because it should have been held when he completed his court-ordered treatment; in the alternative, he argued that the hearing was premature, because he had not yet completed his disposition. The juvenile court overruled R.B.'s objection, satisfying itself that it had the requisite jurisdiction. The magistrate held the completion-of-disposition hearing and entered decisions continuing R.B.'s Tier I classification; R.B. filed objections.

{¶7} Finally, on July 20, 2017, R.B. turned 21 years of age. The juvenile court convened a hearing on R.B.'s objections on September 19, 2017, two months after his birthday. About a month after the hearing, the juvenile court denied R.B.'s objections and adopted the magistrate's decisions continuing R.B.'s Tier I classification. R.B. appealed, raising four assignments of error.

{¶8} On appeal, this court vacated R.B.'s tier classification and determined that he had no duty to register. We reasoned that the juvenile court lacked jurisdiction to enter an order continuing R.B.'s tier classification after he turned 21 and his disposition, by its own terms, concluded. *In re R.B.*, 1st Dist. Hamilton Nos. C-170622 and C-170623, 2019-Ohio-3298, *reversed and remanded,* 162 Ohio St.3d

4

281, 2020-Ohio-5476, 165 N.E.3d 288. Because we vacated R.B.'s tier classification, we deemed his pending assignments of error moot and declined to address them.

{¶9} But the Supreme Court of Ohio reversed our decision, holding that the juvenile court did not relinquish jurisdiction to enter an order under R.C. 2152.84 continuing R.B.'s Tier I classification, that the statutory directive that the hearing be held upon the completion of disposition was not a jurisdictional command, and that the hearing could be held within a reasonable time after the juvenile completed his disposition. *In re R.B.*, 162 Ohio St.3d 281, 2020-Ohio-5476, 165 N.E.3d 288. It remanded the case to us for consideration of the four assignments of error we deemed moot, and we permitted the parties to file supplemental briefs. *Id.* at ¶ 49.

II.

{¶10} R.B.'s assignments of error implicate a variety of issues, ranging from broad constitutional challenges to abuse-of-discretion review of his continued classification. Each assignment of error operates within the complex statutory framework for juvenile dispositions and the prolonged, winding record of this case. In the interest of clarity for the parties, we provide a short summary before embarking on our full analysis.

{¶11} The record shows that when R.B.'s classification was originally imposed, all parties agreed that a Tier I classification was appropriate. The juvenile court entered its classification orders in a timely manner, roughly a month after R.B.'s disposition. R.B. did not object to the classification orders at the time. But R.B. did challenge his Tier I classification as void in a previous case; we ruled against him and he cannot revive those arguments now, even when he recasts them in a different light. As explained more fully below, we reiterate our previous holding that R.B.'s Tier I classification was valid.

{¶12} R.B. also raises several innovative arguments that attack the juvenile court's jurisdiction to hold his end-of-disposition hearing in 2017. But these arguments operate from the premise that R.B.'s disposition concluded (or should have concluded) when the juvenile court released him from "official probation" in 2013. We disagree. R.B.'s disposition was always set to conclude on his 21st birthday in 2017. Although his original dispositional orders did not include the phrase "monitored time," they effectively imposed monitored time by requiring R.B. to obey "all laws and orders of this Court." A juvenile court has wide latitude when fashioning a community-control disposition, and it properly placed R.B. on notice of the requirements of his disposition from the outset. The gap between the conclusion of R.B.'s treatment in 2013 and the end of his disposition in 2017 was an appropriate byproduct of the court's gradual loosening of R.B.'s community-control restrictions, not a violation of due process.

{¶13} Finally, R.B. contends that the juvenile court abused its discretion when it decided at his end-of-disposition hearing to continue his Tier I classification. We agree with R.B. that several of the statutory factors weigh in his favor: his offenses occurred in the context of an extremely troubled home life; he made admirable progress through the beginning stages of his disposition and lowered his risk to re-offend; and he did not commit any additional sex offense. But the state pointed to its own countervailing evidence, including R.B.'s multiple adult convictions and failures to comply with community control once he emerged from intensive supervision. Evidence of R.B.'s adult convictions was relevant to the statutory factors because it showed that R.B. struggled to followed the law and obey court orders after the court loosened his dispositional restrictions. Striking the proper balance between offsetting statutory factors was a task for the juvenile court,

and its ultimate decision to continue R.B.'s classification did not constitute an abuse of discretion on this record.

{¶14} For the above reasons—and as further explained below—we overrule R.B.'s assignments of error and affirm the judgment of the juvenile court.

A.

{¶15} In his first assignment of error, R.B. asserts that, based on the perceived invalidity of his original classification as a Tier I offender, the juvenile court went astray by perpetuating an invalid classification. In this vein, he reasons that the juvenile court lacked jurisdiction to enter the initial classification orders because it did so in contravention of the timing requirements of R.C. 2152.83.

{¶16} We accordingly turn to the statute at hand. R.C. 2152.83(B)(1) provides that, in the case of a juvenile who was 14 or 15 years old at the time of commission of the offense (like R.B.), the juvenile court has discretion as to whether it will classify the juvenile as a juvenile-offender registrant. Classification may occur at a hearing "at the time of disposition of the child, or if the court commits the child * * * to the custody of a secure facility * * * at the time of the child's release from the secure facility." R.C. 2152.83(B)(1), (B)(2), (C) and (D). *See In re T.R.*, 1st Dist. Hamilton Nos. C-190165, C-190166, C-190167, C-190168, C-190169, C-190170, C-190171 and C-190172, 2020-Ohio-4445, ¶ 17 (juvenile court must hold the classification hearing at the time of disposition or upon the juvenile's release from a secure facility). In this case, the juvenile court entered R.B.'s dispositional orders on December 2, 2011, and classified him as a Tier I juvenile-offender registrant on January 13, 2012; R.B. was released from the "secure facility" of Altercrest on February 6, 2013. Emphasizing the gaps between his disposition, classification, and release from Altercrest, R.B. posits that this timeline ran afoul of R.C. 2152.83, divesting the juvenile court of jurisdiction to classify him.

{¶17} But this is not the first time that R.B. has challenged the validity of his Tier I classification before this court, and his first assignment of error runs headlong into our prior judgment. We held in *Buttery* that the juvenile court's January 13, 2012 classification constituted a valid order. *Buttery,* 1st Dist. Hamilton No. C-160609, 2017-Ohio-9113, at ¶ 7, 8. Although R.B. did not feature this particular argument in that case, he attacked the validity of the initial classification and proclaimed it void. *Id.* at ¶ 8. We held in *State v. Stowers* that while a judgment may be attacked at any time as void for lack of jurisdiction, that judgment may not be attacked repeatedly. *Stowers,* 1st Dist. Hamilton No. C-150095, 2015-Ohio-4846, at ¶ 8. "Where a person appears in an action for the purpose of contending that a judgment is void * * * such person thereby submits to the court for its determination whether such judgment is or is not void as a judgment against him; and, if the court determines that such judgment is not void as a judgment against him, even [when] that determination is erroneous on the facts and on the law, the determination is res judicata between the parties * * *." *Claxton v. Simons*, 174 Ohio St. 333, 189 N.E.2d 62 (1963), paragraph four of the syllabus. *See Stowers* at ¶ 9-10 (same). R.B. portrayed his classification order as void in *Buttery*; we overruled his arguments and held to the contrary. *Buttery* at ¶ 7, 8. Pursuant to *Stowers*, R.B. may not attack the order's validity anew here.

{¶18} Further, in *In re R.B.*, the Supreme Court determined that the statutory directive in R.C. 2152.84—which requires that a hearing be held at the end of the juvenile's disposition—is not a jurisdictional requirement and that the hearing may occur within a reasonable proximity to that time, either before or after. *In re R.B.*, 162 Ohio St.3d 281, 2020-Ohio-5476, 165 N.E.3d 288, at ¶ 39. The court summarized: "[N]ot all mandatory provisions are jurisdictional in nature." *Id.* at ¶ 42. "[T]he question in this case is whether the juvenile court loses jurisdiction to

8

hold the hearing based on an alleged failure to comply with a statutory timing requirement. We conclude that it does not." *Id.* at ¶ 44. Based upon the Supreme Court's holding in *In re R.B.*, the juvenile court did not forfeit jurisdiction to classify R.B. where it held the initial classification hearing on January 13, 2012, a little over a month after R.B.'s disposition on December 2, 2011.

{¶19} The record in this case also reflects that the juvenile court entered the classification order agreed to by the parties. For all of the reasons explained above, we accordingly overrule the first assignment of error.

B.

{¶20} In his second assignment of error, R.B. asserts that the juvenile court erred by holding a completion-of-disposition hearing when it lacked jurisdiction to do so. He presents two alternative issues with the timing of his completion-of-disposition hearing under R.C. 2151.84, contending: (1) that the hearing was held too late, because it should have been held when he completed his treatment and official probation on July 29, 2013; and (2) in the alternative, the hearing was held too early, because he had not yet completed his disposition at the time. Pursuant to *In re R.B.*, the completion-of-disposition hearing must take place within a reasonable time, either before or after the end of the juvenile's disposition. *In re R.B.*, 162 Ohio St.3d 281, 2020-Ohio-5476, 165 N.E.3d 288, at ¶ 39.

{¶21} We turn first to R.B.'s argument that his completion-of-disposition hearing was tardy. Highlighting this court's decision in *State v. Amos*, R.B. maintains that the juvenile court should have convened his completion-of-disposition hearing within a reasonable time of July 29, 2013, when he completed his court-ordered treatment and the juvenile court released him from official probation. *Amos,* 2017-Ohio-8448, 87 N.E.3d 1305 (1st Dist.), *appeal accepted,* 152 Ohio St.3d

9

1442, 2018-Ohio-1600, 96 N.E.3d 298, *appeal dismissed as improvidently accepted*, 156 Ohio St.3d 237, 2019-Ohio-168, 125 N.E.3d 832.

{¶22} In *State v. Amos*, Mr. Amos had been adjudicated delinquent of rape and committed to DYS. He was subsequently released from DYS, placed on "parole," and, by agreement, classified by the juvenile court as a Tier I juvenile-offender registrant. The court ultimately discharged him from parole without holding a completion-of-disposition hearing. Over a year later, the juvenile court held (in Mr. Amos's absence) what it termed a "completion-of-disposition hearing" and continued the Tier I classification. In finding that the juvenile court lacked jurisdiction to classify Mr. Amos as a Tier I juvenile-offender registrant because the court had not properly completed the statutorily-required classification process, we explained:

> The juvenile court loses its jurisdiction over a juvenile who has completed his parole or community control and has been discharged by the court. Because the juvenile court did not hold a hearing before Amos was discharged from parole, completing his disposition for his sexually-oriented offense, the juvenile court did not properly complete the statutorily-required process for classifying him as a juvenile-offender registrant, and thus, it had no authority to classify Amos as a Tier I offender. Therefore, Amos has no duty to register as a sex offender.

*Id.* at ¶ 14. We indicated that when the juvenile court discharged Mr. Amos from parole, he had "completed all aspects of the disposition" for his sexually-oriented offense. *Id.* at ¶ 9. At that time, the juvenile court should have held a completion-of-disposition hearing under R.C. 2152.84.

{¶23} In deciding *Amos*, we relied on the Ohio Supreme Court's decision in *State ex rel. Jean-Baptiste v. Kirsch*, where the court recognized that the juvenile

court lacked statutory authority to conduct an initial juvenile-offender-registration hearing after the juvenile fully satisfied the court's delinquency adjudication and reached 21. *Jean-Baptiste,* 134 Ohio St.3d 421, 2012-Ohio-5697, 983 N.E.2d 302. The Supreme Court found that the juvenile court "patently and unambiguously" lacked jurisdiction to classify Jean-Baptiste "after he was released and the court's delinquency adjudication ha[d] been fully satisfied." *Id.* at ¶ 32-33. This holding, the court explained, sat "in accord" with its decision in *In re Cross*, where it determined that "the completion of probation signals the end of the court's jurisdiction over a delinquent juvenile." *Jean-Baptiste* at ¶ 29; *In re Cross,* 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258, ¶ 28.

{¶24} R.B. marshals *Amos*, *Jean-Baptiste* and *In re Cross* for the proposition that a juvenile's disposition ends when he completes probation. He then urges us to conclude that his disposition ended upon his discharge from "official probation" in July of 2013. The trouble with this argument, however, is that it assumes the term "probation" means the same thing here that it did in *Amos*, *Jean-Baptiste* and *In re Cross*. A closer look at the statutory framework for disposition of delinquent juveniles belies this conclusion, and renders *Amos*, *Jean-Baptiste* and *In re Cross* distinguishable from the case at hand.

{¶25} First, we must elucidate the meaning of the word "probation" in context of R.B.'s 2011 dispositional orders and the court's 2013 modification. Under former R.C. 2151.355 (the statute at issue in *In re Cross),* "it was the dispositional order of probation itself that enabled a court to impose and monitor the juvenile's compliance with the conditions of probation." *In re J.F.,* 121 Ohio St.3d 76, 2009-Ohio-318, 902 N.E.2d 19, ¶ 10, citing *In re Cross* at ¶ 11. But in 2002, the General Assembly replaced the rubric of "probation" in juvenile dispositions with a new concept of "community control." *Id.* at ¶ 9. Under R.C. 2152.19, probation is "no

11

longer a stand-alone disposition," and instead "has become a subcategory or optional element of community control." *Id.* at ¶ 11. "[A] dispositional order of community control may include one or several conditions—such as 'intensive probation supervision,' 'basic probation supervision,' and 'community service'—all of which are subject to ongoing supervision by the court." *Id.* Consequently, the termination of a juvenile's "probation" does not automatically strip the juvenile court of continuing jurisdiction. *Id.* "[A]s long as other community-control sanctions remain in effect, the juvenile remains subject to the court's supervision." *Id.*

{¶26} Unfortunately, the juvenile rules and lexicon have not kept pace with the statutory transition to a "community control" concept in juvenile dispositions. *See, e.g.,* Juv.R. 34(C) ("In all cases where a child is placed on probation, the child shall receive a written statement of the conditions of probation."). This mismatch generates confusion in juvenile court orders, which sometimes subject juveniles to "probation" when what they really mean is "community control." *See, e.g., In re J.F.* at ¶ 4. R.B.'s 2011 dispositional orders both contained the following language:

> Place on probation. Commit to the permanent custody of the Ohio Department of Youth Services. Said commitment is suspended on the condition that the defendant obey all laws and orders of this Court. Said commitment to remain in effect until the defendant reaches age 21.

Viewed through the lens of the updated statutory framework, we interpret this order to commit R.B. to DYS until the age of 21, then suspend his sentence and place him on community control subject to two conditions: probation, and "the condition that the defendant obey all laws and orders of this Court." R.B.'s end-of-disposition hearing would be triggered only when he "complete[d] *all aspects of the disposition*," meaning that his community control was terminated or served in full to his 21st

12

birthday. (Emphasis added.) *In re Antwon C.*, 182 Ohio App.3d 237, 2009-Ohio-2567, 912 N.E.2d 182, ¶ 20. *See In re Raheem L.*, 2013-Ohio-2423, 993 N.E.2d 455, ¶ 2 (1st Dist.) (where a juvenile's commitment to DYS until 21 was suspended on condition of probation, disposition ended when the juvenile turned 21).

{¶27} *Amos*, *Jean-Baptiste* and *In re Cross* all share a key feature: in each case, the juvenile court entered an order that ended any remaining conditions of the juvenile's disposition effective on a particular date. *See Amos*, 2017-Ohio-8448, 87 N.E.3d 1305, at ¶ 9 (juvenile who had been released from DYS "completed all aspects of the disposition" when he was officially discharged from parole), citing *In re H.P.*, 9th Dist. Summit No. 24236, 2008-Ohio-5848; *Jean-Baptiste*, 134 Ohio St.3d 421, 2012-Ohio-5697, 983 N.E.2d 302, at ¶ 32 (the "court's delinquency disposition [was] fully satisfied" upon juvenile's release from secured facility on his 21st birthday); *In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258, at ¶ 32 (juvenile "was granted a general release from probation" that signaled the end of disposition). The termination or expiration of all remaining dispositional conditions divested the respective courts of their jurisdiction to enter new classification orders. *See In re J.F.,* 121 Ohio St.3d 76, 2009-Ohio-318, 902 N.E.2d 19, at ¶ 12 ("Once imposed, such [community control] conditions provide 'the tether that allows a court to maintain some connection with a juvenile delinquent.' "), citing *In re Cross* at ¶ 27.

{¶28} According to R.B., the same thing happened here when the juvenile entered its 2013 order terminating his official probation. In the alternative, he argues that any continued community-control sanctions imposed by the 2013 order were illegitimate (for a number of reasons). To address both points, we next turn to the 2013 order, to which R.B. did not object:

> Based upon the Probation Termination Report and being fully advised
> that the defendant has cooperated and abided by the terms of official

probation, the Court orders said juvenile be released from official probation and placed on non-reporting probation with Monitored Time * * *.

By its terms, this order does not expressly end R.B.'s disposition. Instead, it downgrades R.B. from "official probation" to "non-reporting probation" and subjects him to "monitored time." It leaves the original terms of disposition, including R.B.'s suspended commitment to DYS until 21, untouched. *See In re J.F.*, 121 Ohio St.3d 76, 2009-Ohio-318, 902 N.E.2d 19, at ¶ 13 ("Unmodified portions of an original order will remain in effect unless otherwise specified.") Thus, unless R.B. can substantiate the invalidity of the conditions of nonreporting probation and monitored time, his disposition was scheduled to end on his 21st birthday—and his contention that his end-of-disposition hearing occurred too late must fail.

{¶29} Anticipating this problem, R.B. presents a litany of constitutional challenges to the two conditions. Operating from the premise that "monitored time" was not a part of his 2011 dispositional orders, R.B. characterizes the 2013 order as a violation of Juv.R. 35 that could not legitimately extend the court's jurisdiction. He further contends that monitored time is a new, punitive sanction—rendering any belated attempt to enforce it a double-jeopardy violation—and argues that the court's failure to convene a hearing before issuing its 2013 order deprived him of his due-process rights and right to counsel.

{¶30} But we need not speculate on the merits of these arguments, because they all assume that monitored time represented a *new* condition of R.B.'s community control, imposed for the first time by the court's 2013 order. We read the record differently, recognizing that monitored time always represented part of R.B.'s community control—in substance if not in name.

14

{¶31} "Monitored time" is defined by statute as "a period of time during which an offender continues to be under the control of the sentencing court or parole board, subject to no condition other than leading a law-abiding life." R.C. 2929.01(Y). In its 2011 dispositional orders, the juvenile court suspended R.B.'s commitment to DYS on the condition that R.B. "obey all laws and orders of this Court." Thus, the condition that R.B. had to lead a law-abiding life was part of his original disposition, and the juvenile court did not impose a new condition in its 2013 order revoking R.B.'s "official probation." Although the juvenile court introduced the new *term* of "monitored time" in its 2013 order, this is not the same as a new *disposition.* The juvenile court's substitution of the proper statutory language in 2013 did not functionally alter any of the substance of R.B.'s original disposition.

{¶32} In sum, because R.B.'s 2011 dispositional orders suspended his commitment on dual conditions of probation and monitored time, the court's 2013 order subjecting R.B. to "non-reporting probation with monitored time" did not impose any new penalties in potential violation of due process or double jeopardy. Nor did it signal the end of R.B.'s disposition. From the outset, R.B.'s disposition was set to conclude on his 21st birthday: July 20, 2017. The magistrate held a completion-of-disposition hearing on May 8, 2017, and entered orders continuing R.B.'s Tier I classification on July 13 and 14, 2017 (all before the birthday). In response to R.B.'s objections, the juvenile court judge convened a hearing on September 19, 2017, and entered an order adopting the magistrate's decision and continuing R.B.'s Tier I classification on October 30, 2017. We conclude that these proceedings fell within a reasonable time of R.B.'s July 20, 2017 completion of disposition, and his second assignment of error is overruled. *See In re R.B.*, 162 Ohio St.3d 281, 2020-Ohio-5476, 165 N.E.3d 288, at ¶ 39.

{**¶33**}  We caution that our acceptance of a dispositional order deviating from the R.C. 2152.19 "community control" rubric in this case should not be misinterpreted as a blessing of such orders writ large.  The interests of justice are always better served when a juvenile receives clear and unambiguous notice of his legal responsibilities, especially where (as here) noncompliance can result in the imposition of a suspended sentence.  We find that the language of R.B.'s original disposition sufficed to subject him to monitored time because the 2011 orders echoed—nearly verbatim—the definition of monitored time.  There was no functional difference between the juvenile court's 2011 instruction that R.B. "obey all laws and orders of this court" and its 2013 reference to "monitored time," which required R.B. to "lead[] a law-abiding life" "under the control of the sentencing court."  *See* R.C. 2929.01(Y).  Under these circumstances, the juvenile court's 2011 departure from (and 2013 return to) the R.C. 2152.19 language of "monitored time" effectuated no substantive change to R.B.'s disposition.  But we express no opinion as to whether, in different circumstances, a juvenile court's departure from the R.C. 2152.19 framework could trigger constitutional concerns.  R.B.'s second assignment of error is overruled.

C.

{**¶34**}  In his third assignment of error, R.B. contends that the juvenile court violated his due-process rights by waiting 46 months after he completed treatment to hold the completion-of-disposition hearing.

{**¶35**}  To the extent that this argument rests on R.B.'s claim that his disposition ended when he finished his court-ordered treatment in 2013, it fails for the reasons explained above.  R.B.'s disposition concluded on his 21st birthday in July 2017, and his completion-of-disposition hearing occurred within a reasonable time of that date.

16

{¶36} But R.B. also presses further, suggesting that even if his disposition wrapped up in 2017, the 46-month gap between his completion of court-ordered treatment and his end-of-disposition hearing violated his due-process rights. He alleges that the 46-month gap impeded his ability to present evidence of rehabilitation, which could have convinced the juvenile court to discontinue his classification. He further points out that if the juvenile court held a hearing and entered a classification order back in 2013 (when it terminated his official probation), he would have had an earlier opportunity to bring an R.C. 2152.85 petition for declassification.

{¶37} " '[F]undamental fairness is the overarching concern' " in determining due-process standards as they relate to juveniles. *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 71, quoting *State v. D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, ¶ 44. Here, the juvenile court placed R.B. on community control subject to various restrictions, which it gradually loosened over time. This disposition comports with the "system of graduated sanctions and services" provided for in R.C. 2152.01(A). Part of that rehabilitative process was to see how R.B. could internalize the lessons he (hopefully) learned. In terminating R.B.'s "official probation," the juvenile court acknowledged his success, but chose to retain jurisdiction by keeping R.B. on nonreporting probation and monitored time. This less-restrictive disposition gave R.B. the opportunity to demonstrate that rehabilitative measures had taken root, while simultaneously allowing the juvenile court to maintain its supervision of him. *See In re J.F.*, 121 Ohio St.3d 76, 2009-Ohio-318, 902 N.E.2d 19, at ¶ 12.

{¶38} We are mindful that in the context of juvenile proceedings, "fundamental fairness to the child demands the unique expertise of a juvenile judge." *In re C.P.* at ¶ 76, citing *D.H.* at ¶ 59. "[T]he discretion of the juvenile judge in

fashioning a disposition" is the "essential element of fundamental fairness as it applies in the juvenile system." *In re D.R.*, 2021-Ohio-1797, ___ N.E.3d ___, ¶ 14 (1st Dist.). That discretion extends to the juvenile court's decision to place a child on a less-restrictive form of community control without inadvertently triggering the end of the child's disposition. So far as the juvenile court had the authority to commit R.B. to DYS until his 21st birthday, it also had the discretion to fashion a community-control disposition that loosened over time and concluded on his 21st birthday.

{¶39} R.B. complains that the 46-month gap between his treatment and his completion-of-disposition hearing impeded his ability to present favorable evidence of his treatment (and implicitly, allowed presentation of unfavorable evidence like his adult convictions). But on this record, R.B. cannot demonstrate prejudice sufficient to rise to the level of a due-process violation. R.B.'s successful treatment and initial compliance with his disposition is already evident in the record. No one disputes that R.B. responded well to treatment and thrived during the period of close supervision; his inability to present *more* evidence of early success is not fundamentally unfair. Unfortunately, R.B.'s subsequent performance on non-reporting probation and monitored time paints a different picture. The fact that R.B. committed adult offenses before turning 21 indicates potential rehabilitative failures. Further, his commission of an adult failure-to-register offense was relevant to the long-term effectiveness of his disposition and his risk of reoffending. R.B. essentially maintains that if the court had held the hearing when he completed his court-ordered treatment, then his adult record would not have been considered. But the prejudice R.B. faces from consideration of his adult convictions stems from his own failure to comply with the community-control condition of monitored time, not any action by the juvenile court. We accordingly overrule the third assignment of error.

D.

18

{¶40} In his final assignment of error, R.B. contends that the juvenile court abused its discretion in continuing his Tier I classification.[1]

{¶41} R.C. 2152.84(A)(1) provides that "upon completion of the disposition * * * made for the sexually oriented offense * * * on which the juvenile offender registrant order was based," the juvenile court "shall conduct a hearing to review the effectiveness of the disposition and of any treatment." The purpose of this hearing is to determine the "risks that the child might re-offend" and decide whether the initial tier classification should be continued, modified, or terminated "under division (A)(2) of this section." R.C. 2152.84(A)(1). Division (A)(2) requires the juvenile court to reach its decision after considering "all relevant factors, including but not limited to" the factors in R.C. 2152.83(D). In turn, the R.C. 2152.83(D) factors include, but are not limited to: (1) the nature of the offense, (2) whether the offender has shown remorse, (3) the public interest and safety, (4) the results of any treatment and follow-up professional assessments, and (5) additional factors set forth in R.C. 2150.11(K) and 2929.12(B) and (C).

{¶42} Adding to this litany of factors, R.C. 2150.11(K) requires the juvenile court to consider the offender's age, the offender's prior criminal or juvenile record regarding all offenses including sex offenses, the victim's age, whether there were multiple victims, any usage of alcohol or drugs, whether any prior offense was a sex offense and whether the offender received treatment, whether the offender served a sentence or dispositional order for the prior offense, any mental illness or disability of the offender, the nature of the sexual conduct and any pattern of abuse, whether

---

[1] We note that while R.B. argues under this assignment of error that the juvenile court abused its discretion in excluding certain evidence from the completion-of-disposition hearing, he did not assign as error the exclusion of that evidence. We therefore do not consider R.B.'s arguments concerning the improper exclusion of evidence.

the offense involved cruelty or the threat of cruelty, and any additional behavioral characteristics contributing to the offender's conduct. Finally, the R.C. 2929.12(B) and (C) factors—as they apply to R.B.—are the victim's physical or mental injury, whether the victim suffered serious harm, whether the offender's relationship with the victim facilitated the offense, whether the victim induced or facilitated the offense, whether the offender was acting under strong provocation, whether the offender expected to cause physical harm, and whether there are substantial grounds to mitigate the offender's conduct.

{¶43} At the completion-of-disposition hearing in this case, the state presented evidence of R.B.'s adult criminal record. In addition to the failure-to-register conviction at issue in *State v. Buttery,* R.B. was convicted in 2016 for stealing $500 from a victim's wallet. *See Buttery,* 162 Ohio St.3d 10, 2020-Ohio-2998, 164 N.E.3d 294. Both courts placed R.B. on community control; in both cases, R.B. violated his community control. Specifically, in March 2017, R.B. was charged with violating the terms of community control for his failure-to-register offense by possessing a firearm that the probation officer found in his bedroom, failing to submit to urine testing, testing positive for marijuana and cocaine, failing to report, failing to make payments on his court debt, failing to do his required 100 hours of community service and failing to complete drug treatment. He was found guilty and sentenced to 18 months in prison, which he was serving at the time of the completion-of-disposition hearing.

{¶44} The state also pointed out to the juvenile court that the victims were four years old at the time of the offenses, they were R.B.'s cousins, R.B. had used candy to entice the victims to engage in sexual acts, R.B. urged the victims not to tell anyone about the abuse, and R.B. had no stable home structure.

{¶45} R.B. countered with his own set of countervailing statutory factors, highlighting the lack of evidence that the victims suffered serious physical injury or that he intended to cause serious physical harm; his expression of genuine remorse; his age at the time of the offense and the absence of prior contact with the court system; his diagnosis with ADHD, adjustment disorder, and a learning disorder; his performance behind his grade level and his below average word knowledge. R.B. also emphasized his unstable home environment, portraying a nomad-like existence as he cycled through various schools and battled drug exposure and homelessness. R.B.'s biological father was not in the picture, and R.B. reported his own experience of unwanted sexual contact from another boy. Finally, R.B. presented evidence of his success in treatment, leading to his classification as a low risk to reoffend at the time his treatment concluded. He also pointed out that he had not committed another sex offense.

{¶46} Both parties in this case debate the applicability and relevance of the various statutory factors, and our review of the juvenile court's decision is highly deferential. In essence, R.B. argues that the juvenile court erred by considering his adult record, and that without this adult record, the balance of factors would tip in his favor. We disagree. The juvenile court was required to consider "all relevant factors" in determining whether to continue R.B.'s classification, "including but not limited to" the many factors enumerated above. *See* R.C. 2152.84(A)(2). Whether R.B. committed adult offenses while on nonreporting probation and monitored time with the juvenile court is certainly relevant. Each adult conviction constituted a violation of R.B.'s original disposition requiring him to "obey all laws and orders of this Court," and his repeated community-control violations speak to the "public interest and safety" factor included in R.C. 2152.83(D).

**{¶47}** Based upon the record, and in light of the wide discretion afforded to the juvenile court, we hold that the juvenile court's continuation of R.B.'s Tier I juvenile-offender-registrant classification was not an abuse of discretion. We accordingly overrule the fourth assignment of error.

**{¶48}** The juvenile court's judgments continuing R.B.'s classification as a Tier I juvenile-offender registrant are affirmed.

Judgments affirmed.

**ZAYAS, P.J.**, and **CROUSE, J.**, concur.

Please note:
The court has recorded its own entry this date.