[Cite as *In re J.N.*, 2022-Ohio-2109.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE:  J.N., a minor child. | : | APPEAL NOS. C-210317 |
| | | C-210387 |
| | : | TRIAL NO. 19-275Z |
| | | |
| | : | *O P I N I O N.* |

Appeals From: Hamilton County Juvenile Court

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal: June 22, 2022

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mary Stier,* Assistant Prosecuting Attorney, for Plaintiff-Appellee State of Ohio,

*Raymond T. Faller*, Hamilton County Public Defender, and *Jessica Moss*, Assistant Public Defender, for Defendant-Appellant J.N.

**WINKLER, Judge.**

{¶1} Defendant-appellant J.N. has appealed the Hamilton County Juvenile Court's orders continuing his classification as a Tier I juvenile offender registrant under Ohio's version of the Adam Walsh Act ("AWA") and releasing him from reporting probation and placing him on nonreporting probation with monitored time. We affirm the juvenile court's judgments.

**Facts and Procedure**

{¶2} On January 15, 2019, a complaint was filed against J.N. in the Hamilton County Juvenile Court, alleging that he was delinquent for having committed acts which, had they been committed by an adult, would have constituted the offense of rape. He admitted to a reduced charge of gross sexual imposition. J.N., who was 14 years old at the time of the offense, and the victim, his 12-year-old cousin, were spending the night at a relative's home. J.N. entered the victim's bedroom, attempted to have vaginal intercourse with her, and forced her to perform fellatio on him.

{¶3} After a dispositional hearing on May 14, 2019, the juvenile court imposed a suspended commitment to the Ohio Department of Youth Services ("DYS") until age 21, placed J.N. on probation, and ordered him to complete the sex-offender residential program at Lighthouse Youth Services ("Lighthouse"). The commitment was suspended on the condition, among other things, that J.N. "obey all laws and orders of this Court." Subsequently, J.N. was classified as a Tier I juvenile offender registrant and was notified of his duties to register as a sex offender.

{¶4} Two probation violations were filed against J.N. One alleged that he had consumed two Percocets while at Lighthouse; the other alleged that he was to be

removed from the program due to behavioral issues, but he was ultimately allowed to remain in the program.

{¶5} Eventually, a dependency proceeding was initiated in connection with the delinquency case because J.N. could not return home to live as there were young children in the home. J.N. was ultimately moved to a different program in the same facility. In the dependency portion of the case, a caseworker for the Hamilton County Department of Job and Family Services ("JFS") filed a progress report that stated that J.N. had attacked a smaller resident, that J.N.'s temper was of concern, and that J.N. had choked a resident until he "passed out" and then "threw him on the floor." The report also stated that the staff and J.N.'s therapist had seen "much improvement" in J.N.

{¶6} After J.N. had completed the Lighthouse program, the juvenile court held an end-of-disposition hearing to determine whether his Tier I classification should be continued. Following a hearing, the juvenile court determined that J.N.'s classification should continue. J.N. has appealed that judgment in the appeal numbered C-210317.

{¶7} On June 24, 2021, the juvenile court entered an order releasing J.N. from "official probation" and placing him on nonreporting probation with monitored time. J.N. has appealed that order in the appeal numbered C-210387. The appeals have been consolidated. J.N. has raised four assignments of error for our review.

## Assignments of Error

{¶8} Before addressing J.N.'s assignments of error, we turn to the state's argument that the orders from which J.N. has appealed are not final orders.

### *The Orders are Final Appealable Orders*

{¶9} The state asserts that the orders from which J.N. has appealed are not final appealable orders. The state argues that because the juvenile court held the end-

of-disposition hearing too early, i.e., before the actual end of J.N.'s disposition, which was age 21, the orders are not final and appealable. We note that neither party objected below to the timing of the end-of-disposition hearing and neither party has raised an assignment of error on appeal challenging the timing of the hearing. Further, the Ohio Supreme Court held in *In re R.B.*, 162 Ohio St.3d 281, 2020-Ohio-5476, 165 N.E.3d 288, ¶ 49, that R.C. 2152.84's "statutory directive that the hearing be held 'upon completion of the disposition' is not a jurisdictional requirement."

{¶10} An order is final and appealable when it "affects a substantial right made in a special proceeding or upon a summary application in an action after judgment." R.C. 2505.02(B)(2). Juvenile court proceedings are special proceedings. *State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 360, 626 N.E.2d 950 (1994). A "substantial right" is a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect. R.C. 2505.02(A)(1). "[A] substantial right is, in effect, a legal right that is enforced and protected by law." *State v. Coffman*, 91 Ohio St.3d 125, 127, 742 N.E.2d 644 (2001); *see In re B.D.*, 2020-Ohio-4128, 157 N.E.3d 400, ¶ 6 (1st Dist.). An order that affects a substantial right "has been perceived to be one which, if not immediately appealable, would foreclose appropriate relief in the future." *In re Adams*, 115 Ohio St.3d 86, 2007-Ohio-4840, 873 N.E.2d 886, ¶ 44.

{¶11} J.N. appeals from the juvenile court's order continuing his classification under R.C. 2152.84 as a Tier I juvenile offender registrant, and the court's order modifying his order of probation from reporting probation to nonreporting probation with monitored time. Both of these orders, made in a special proceeding, affect J.N.'s penal interest. Therefore, they are final appealable orders.

{¶12} Our holding in *In re R.B.*, 2021-Ohio-2112, 174 N.E.3d 480 (1st Dist.), does not require a different result. In that case, we did point out that R.B.'s disposition

4

continued until age 21 or until his community control was terminated, but we did not hold that the timing of the end-of-disposition hearing affected the finality of the juvenile court's orders. In fact, we have found nothing to support the state's argument that the timing of the end-of-disposition hearing, even if erroneous, affects the finality of the juvenile court's orders. We hold that the orders from which J.N. appeals are final appealable orders.

{¶13} Having determined that the orders from which J.N. has appealed are final appealable orders, we turn now to his assignments of error. For purposes of clarity, we will address J.N.'s assignments of error out of order.

*The JFS Progress Report*

{¶14} In his second assignment of error, J.N. argues that the juvenile court abused its discretion when it considered a "JFS Children's Services Progress Report," dated September 30, 2020, in determining whether to continue J.N.'s classification, because it had not been admitted into evidence at the R.C. 2152.84 end-of-disposition hearing. Further, J.N. argues that he was prejudiced because the court considered the report and his delinquency counsel was not a part of the dependency proceeding for which the report was generated.

{¶15} During the pendency of this delinquency case, a dependency proceeding was initiated because J.N. could not return to his father's home as there were young children living there. As part of his dependency placement, progress reports were generated. One stated that J.N. had attacked a smaller resident and choked another resident. The delinquency magistrate, who was not the magistrate who presided over the dependency portion of the case, and the juvenile judge considered the report when deciding whether to continue J.N.'s Tier I classification.

{¶16} The dependency proceeding was intertwined with, and had its genesis in, the delinquency proceeding. As part of the dependency proceeding, the progress

report contained the same case number as the delinquency proceeding. All proceedings took place in and were filed under the delinquency case number. The same juvenile court judge presided over all the delinquency and dependency proceedings in this case.

{¶17} R.C. 2152.84(A)(2) requires the juvenile court to consider "all relevant factors," and the fact that J.N. attacked two other residents while in placement was certainly relevant to the effectiveness of J.N.'s disposition and treatment and whether J.N. was at risk to reoffend. We hold that the juvenile court did not abuse its discretion in considering the JFS progress report in determining whether to continue J.N.'s Tier I classification. The assignment of error is overruled.

*The Research Articles*

{¶18} J.N.'s third assignment of error alleges that the trial court erred in excluding from evidence two research articles. At the end-of-disposition hearing, J.N. offered into evidence two research articles cited by psychologist Dr. Carla Dreyer in her risk assessment/psychological evaluation report on J.N. Dr. Dreyer had evaluated J.N. prior to the end-of-disposition hearing and had placed him in the low-risk-to-reoffend category. The first article, the Caldwell study, concluded that juvenile sex offenders have an extremely low level of recidivism. The second article, the Letourneau study, detailed the negative effects of sex-offender registries on juveniles and the failure of those registries to increase public safety. The juvenile court acknowledged that the studies "explain Dr. Dreyer's opinion on juvenile sex offenders," but ultimately excluded them from evidence, finding that they were "not relevant because they further a policy argument and not an argument supplementing [J.N.'s] case." J.N. argues that the juvenile court abused its discretion in refusing to admit the articles into evidence.

**{¶19}** The state argues that the articles were not relevant to the issue before the juvenile court, which was J.N.'s specific risk of reoffending. Nothing in the articles, the state argues, tended to make more or less probable any fact in J.N.'s specific case. Further, the state argues that J.N. was not prejudiced because Dr. Dreyer had placed J.N. in the low-risk category for reoffending.

**{¶20}** This court reviews questions regarding the admission or exclusion of evidence under an abuse-of-discretion standard. *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001); *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528. A trial court abuses its discretion if it acts "unreasonably, arbitrarily, or unconscionably in determining the evidentiary issue at hand." *State v. O'Connell*, 2020-Ohio-1369, 153 N.E.3d 771, ¶ 14 (1st Dist.). This court "will not disturb a trial court's ruling on evidentiary issues on appeal absent an abuse of discretion and proof of material prejudice." *State v. Lavender*, 2019-Ohio-5352, 141 N.E.3d 1000, ¶ 9 (1st Dist.).

**{¶21}** Dr. Dreyer's report explained that there may be a difference between the factors for reoffending in adolescents and those of adult male sex offenders. According to Dr. Dreyer, adolescents are still developing "cognitively and psychologically, and their life circumstances may be unstable." Her report states, "Given the developmental issues inherent in juvenile offenders, risk status may change somewhat dramatically and in a brief period of time, such that reassessment of risk is recommended at regular intervals." Dr. Dreyer goes on to explain that there "are no well-validated actuarial instruments designed to assess risk of sexual recidivism among juveniles" and that "there is not a clear consensus among clinicians or researchers about how to weigh each risk factor or how to deal with combinations of factors." Dr. Dreyer stated that in her opinion, J.N. "is at a low risk to sexually reoffend."

**{¶22}** Following a review of the record, we hold that any error in the exclusion of the two articles was harmless. The information contained in the articles, as it relates to J.N.'s risk for sexual reoffending, was essentially before the court in the form of Dr. Dreyer's report, which placed J.N. in the low-risk-to-reoffend category. The third assignment of error is overruled.

*Continuing Classification as a Tier I Offender*

**{¶23}** J.N.'s first assignment of error states, "The juvenile court abused its discretion by continuing J.N.'s classification as a Tier I offender." J.N. argues that the juvenile court erred in continuing J.N.'s Tier I juvenile-offender-registrant classification because J.N.'s treatment and disposition were effective, the undisputed expert opinion was that he posed a low risk to reoffend, and the statutory factors supported discontinuing the classification.

**{¶24}** R.C. 2152.84(A)(1) provides that "upon completion of the disposition * * * made for the sexually oriented offense * * * on which the juvenile offender registrant order was based," the juvenile court "shall conduct a hearing to review the effectiveness of the disposition and of any treatment." The purpose of this hearing is to determine the "risks that the child might re-offend" and decide whether the initial tier classification should be continued, modified, or terminated "under division (A)(2) of this section." R.C. 2152.84(A)(1). Division (A)(2) requires the juvenile court to reach its decision after considering "all relevant factors, including but not limited to" the factors in R.C. 2152.83(D). In turn, the R.C. 2152.83(D) factors include, but are not limited to: (1) the nature of the offense, (2) whether the offender has shown remorse, (3) the public interest and safety, (4) the results of any treatment and follow-

8

up professional assessments, and (5) additional factors set forth in R.C. 2150.11(K) and 2929.12(B) and (C).

Adding to this litany of factors, R.C. 2150.11(K) requires the juvenile court to consider the offender's age, the offender's prior criminal or juvenile record regarding all offenses including sex offenses, the victim's age, whether there were multiple victims, any usage of alcohol or drugs, whether any prior offense was a sex offense and whether the offender received treatment, whether the offender served a sentence or dispositional order for the prior offense, any mental illness or disability of the offender, the nature of the sexual conduct and any pattern of abuse, whether the offense involved cruelty or the threat of cruelty, and any additional behavioral characteristics contributing to the offender's conduct.

*In re R.B.*, 2021-Ohio-2112, 174 N.E.3d 480, at ¶ 41-42.

**{¶25}** The juvenile court must also consider the R.C. 2929.12(B) and (C) factors, including the victim's physical or mental injury, whether the victim suffered serious harm, whether the offender's relationship with the victim facilitated the offense, whether the victim induced or facilitated the offense, whether the offender was acting under strong provocation, whether the offender expected to cause physical harm, and whether there are substantial grounds to mitigate the offender's conduct. *Id.*

**{¶26}** J.N. argues that the juvenile court abused its discretion in continuing his classification because Dr. Dreyer's expert report indicated that he was at a low risk to reoffend and the statutory factors supported declassifying him. He argues that he was only 14 at the time of the offense, he had completed all aspects of his treatment, he had made progress in his ability to take responsibility for his actions, and he had

apologized for his conduct. Dr. Dreyer's report stated that he had reduced his risk for reoffending to the lowest possible level. The Lighthouse staff lauded his progress, and he did well in treatment. He had no other sexual offenses and he did not exhibit any sexually inappropriate behavior while at Lighthouse. Even though he had some "behavioral hurdles" the staff recognized that he had changed his behavior for the better. His probation officer was satisfied with his progress.

{¶27} The state notes that J.N. does not argue that the juvenile court failed to consider any of the required factors, but he challenges the court's conclusions with respect to some of the factors. J.N. entered the bedroom of his 12-year-old cousin and raped her, although he admitted to the lesser charge of gross sexual imposition. The state argues that J.N.'s contention that he was remorseful is belied by his continued placement of blame on the victim, in particular his claim that she had "pressured" him.

{¶28} The juvenile court acknowledged that Dr. Dreyer considered J.N. a low risk to reoffend, but the court was concerned about whether J.N. was sufficiently rehabilitated. The court noted that J.N. had violent tendencies, impulse issues, and disregard for the rules of the Lighthouse placement. Staff noted that J.N. would leave placement and return whenever he wanted, often after curfew. J.N. was diagnosed with "Unspecified Disruptive, Impulsive Control, and Conduct Disorder; an encounter for mental health services for perpetrator of non-parental sexual abuse; and Cannabis Use Disorder." The juvenile court noted that there was serious harm to the victim, J.N.'s relationship to the victim facilitated the offense, and the victim had not facilitated the offense, in spite of J.N.'s assertions to the contrary.

{¶29} Our review of the juvenile court's decision is "highly deferential." *In re R.B.*, 2021-Ohio-2112, 174 N.E.3d 480, at ¶ 46. The record shows that the juvenile court carefully considered the factors in continuing J.N.'s classification. Following a complete review of the record, and considering the "wide discretion afforded to the

juvenile court," *see id.* at ¶ 47, we hold that the juvenile court did not abuse its discretion in continuing J.N.'s classification as a Tier I juvenile offender registrant. The first assignment of error is overruled.

*Monitored Time*

{¶30} J.N.'s fourth assignment of error asserts that the "juvenile court's decision terminating J.N. from official probation and placing him on non-reporting probation with monitored time was not valid, exceeded the juvenile court's jurisdiction and violated J.N.'s right to due process." J.N. argues that the juvenile court's order placing him on nonreporting probation with monitored time without holding a hearing exceeded the court's authority and violated J.N.'s due-process and double-jeopardy rights.

{¶31} In *In re R.B.*, this court held that because R.B.'s 2011 dispositional order suspended his commitment to DYS until age 21 on the dual conditions of monitored time and probation, the juvenile court's 2013 order subjecting him to "non-reporting probation with monitored time" did not impose any new penalties in violation of due process or double jeopardy. The 2013 order left the original disposition, including a suspended commitment to DYS until age 21, in place; the order did not impose a new condition of community control or any new penalties where monitored time had always been a part of the disposition because the dispositional order had conditioned the suspension of the DYS commitment on the condition that R.B. obey all laws and orders of the court. Although the original dispositional orders did not include the phrase "monitored time," they effectively imposed monitored time by requiring R.B. to "obey all laws and orders of this Court." Therefore, R.B. was properly on notice of the requirements of his disposition from the outset.

{¶32} Because probation is a subcategory of community control, "the termination of a juvenile's 'probation' does not automatically strip the juvenile court

11

of continuing jurisdiction." *In re R.B.*, 2021-Ohio-2112, 174 N.E.3d 480, at ¶ 25. " '[A]s long as other community-control sanctions remain in effect, the juvenile remains subject to the court's supervision.' " *Id.* at ¶ 25, quoting *In re J.F.*, 121 Ohio St.3d 76, 2009-Ohio-318, 902 N.E.2d 19, ¶ 10.

{¶33} In this case, J.N.'s original dispositional order suspended his commitment to DYS until age 21, among other things, on the condition that he "obey all laws and orders of this Court." Therefore, like R.B., J.N. was subject to monitored time from his initial disposition. No new conditions or penalties were imposed because monitored time had always been a part of his disposition. And like R.B., J.N. was properly on notice of the requirements of his disposition from the outset. The fourth assignment of error is overruled.

## Conclusion

{¶34} The judgments of the juvenile court are affirmed.

Judgments affirmed.

**MYERS, P.J.,** and **CROUSE, J.,** concur.

Please note:
The court has recorded its own entry this date.

12